UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

ANGELICA WEEDEN,

        Plaintiff,

        v.                                       24-CV-1258-LJV
                                                DECISION & ORDER

LIBERTY MUTUAL CCS COLLECTIONS,

        Defendant.
_____

On July 12, 2024, the pro se plaintiff, Angelica Weeden, commenced this action in New York State Supreme Court, Erie County, against "Liberty Mutual CCS Collections" ("Liberty Mutual").[1] *See* Docket Item 1-1. In her complaint, Weeden "assert[ed] a claim . . . arising from alleged credit reporting by Liberty Mutual" and sought $1 million in damages. *See generally id.*; *see also* Docket Item 1 ¶ 2.

Liberty Mutual then removed the action to this Court, *see* Docket Item 1, and moved to dismiss, Docket Item 5. Weeden did not respond to that motion within the time ordered by the Court, *see* Docket Item 6, but she instead moved for a $1 million

---

[1] The defendant identifies itself as Liberty Mutual Insurance Company and says that it was incorrectly named as "Liberty Mutual CCS Collections." *See* Docket Item 5. The complaint names only "Liberty Mutual" as a defendant, Docket Item 1-1 at 4; the summons, on the other hand, names "Liberty Mutual CCS Collections," *id.* at 2. But "Liberty Mutual" and "CCS Collections" appear on separate lines in the summons, *id.*, and Weeden alleges that her information was sent to CCS Collections by "the company" she paid for insurance, *see id.* at 3, presumably Liberty Mutual. So it may well be that CCS Collections is a separate entity that Weeden intended to sue in addition to Liberty Mutual. In any amended complaint, Weeden shall clarify whether CCS Collections is a separate entity and, if so, the role she alleges CCS Collections to have played in causing any injury she sustained. Throughout this opinion, page numbers in docket citations refer to ECF pagination.

judgment against Liberty Mutual for its purported "violation of the [FCRA]," *see* Docket Item 9 (alteration in original).  After Liberty Mutual moved to strike that motion "as fundamentally insufficient," Docket Item 10, the Court construed it as a motion for judgment on the pleadings and denied it as premature, Docket Item 11.

In light of Weeden's pro se status, the Court gave her another opportunity to respond to Liberty Mutual's motion to dismiss, *see id.*, which she then did, *see* Docket Item 14.  After Liberty Mutual replied, Docket Item 15, Weeden wrote to the Court, submitting several photos of her credit reports and two receipts "showing [Liberty Mutual's] being paid," Docket Item 16.  Liberty Mutual then asked the Court to reject Weeden's letter "as untimely and improper"; Liberty Mutual also noted that because Weeden "still owes . . . $61," it would "be counterclaiming" for that amount if the Court denied its motion to dismiss, *see* Docket Item 17 at 1.

For the reasons that follow, the Court grants Liberty Mutual's motion to dismiss but gives Weeden the opportunity to file an amended complaint correcting the deficiencies identified below.

## **BACKGROUND**

Liberally construed, the complaint and related submissions tell the following story.[2]

---

[2] On a motion to dismiss, the court "accept[s] all factual allegations as true and draw[s] all reasonable inferences in favor of the plaintiff." *Trs. of the Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 843 F.3d 561, 566 (2d Cir. 2016).  The following facts are taken from the complaint, Docket Item 1-1, Weeden's state court submissions, Docket Items 1-2 through 1-14, and, where noted, other submissions she has made to this Court.  *See Rivera v. Westchester County*, 488 F. Supp. 3d 70, 76 (S.D.N.Y. 2020) ("[W]hen the complaint is drafted by a pro se plaintiff, the Court may consider materials outside the complaint to the extent that they are consistent with the

Weeden purchased a renters insurance policy from Liberty Mutual with an effective date of January 22, 2022.  Docket Item 16 at 9; *see also* Docket Item 1-5.[3]  Weeden made a payment to Liberty Mutual on January 24, 2022, but she canceled the policy a short time later.  Docket Item 14 at 1.  Even though it had received payment, Liberty Mutual "added themselves [sic] to [her] credit report" on September 11, 2023.  *Id.*; *see also id.* at 2 (credit report showing $61 open balance owed to Liberty Mutual).

After that, Liberty Mutual "consistently updated themselves [sic] as a collections account," causing Weeden's credit score to decrease.  Docket Item 14 at 1.  Liberty Mutual also "gave [Weeden's] information to a company called CCS Collections[,] who added themselves [sic] to [her] credit report after Liberty Mutual came off."  Docket Item 1-1 at 4.  CCS Collections "updated themselves [sic] regularly as well."  *Id.*

All that caused Weeden's "blood pressure to rise."  *Id.*  She also has experienced "stress" as well as financial repercussions including "many" denials when she tried to refinance a loan.  Docket Item 14 at 1.  She seeks $1 million in damages.  Docket Item 1-1 at 3.

---

allegations in the complaint including . . . documents that a pro se litigant attaches to [her] opposition papers." (citations and internal quotation marks omitted)).  Moreover, in light of Weeden's pro se status, the Court will consider the letter she sent to the Court in response to Liberty Mutual's reply, Docket Item 16, despite Liberty Mutual's assertion that her letter was "untimely and improper," *see* Docket Item 17 at 1.

[3] Weeden also has submitted a billing statement dated June 22, 2020, which Weeden says "show[s Liberty Mutual's] being paid."  Docket Item 16 at 1, 10.  That document refers to an insurance policy with a different number, however, and it does not include any information identifying to whom the payment was made.

3

## **LEGAL PRINCIPLES**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556).

## **DISCUSSION**

The complaint, which was initially filed in state court, did not specify a cause of action. *See generally* Docket Item 1-1. But in a letter to the Court, Docket Item 12, and in her subsequent response to the motion at bar, Docket Item 14, Weeden noted that she is pursuing this action under the Fair Credit Reporting Act ("FCRA").

**I.   FCRA**

"Congress enacted the FCRA in 1970 to promote efficiency in the Nation's banking system and to protect consumer privacy." *TRW Inc. v. Andrews*, 534 U.S. 19, 23 (2001) (citing 15 U.S.C. § 1681(a)). It "establishe[d] the responsibilities and rights of consumers, furnishers of credit information, credit reporting agencies . . . , and users of credit information." *Hawthorne v. Citicorp Data Sys., Inc.*, 216 F. Supp. 2d 45, 47

"A claim is stated [under section 1681s-2(b)] . . . only if [the] plaintiff shows that: (1) the furnisher received notice of a credit dispute from a credit reporting agency, and (2) the furnisher thereafter acted in willful or negligent noncompliance with the statute" by failing to investigate the dispute. *See Markovskaya v. Am. Home Mortg. Servicing, Inc.*, 867 F. Supp. 2d 340, 343 (E.D.N.Y. 2012) (citation and internal quotation marks omitted). "[T]he duty to investigate a credit dispute is triggered only upon notice of the dispute from a consumer reporting agency." *See Nguyen v. Ridgewood Sav. Bank*, 66 F. Supp. 3d 299, 305 (E.D.N.Y. 2014).

Nothing that Weeden has submitted to this Court, including the complaint, alleges or even suggests that Liberty Mutual received any notice of a credit dispute with her, let alone that she reported a dispute in connection with the supposedly outstanding balance for the renters insurance policy. And because she has not alleged that Liberty Mutual received any notice of a dispute, Weeden also has failed to allege the second element of a claim under the FCRA's private right of action: that Liberty Mutual failed to investigate the dispute. *See Nguyen*, 66 F. Supp. 3d at 306 (dismissing FCRA claim against furnisher of information because plaintiff "failed to plausibly allege that [furnisher] received notice of [p]laintiff's dispute from a consumer reporting agency[] and failed to plausibly allege that [furnisher] violated its duty to investigate pursuant to the statute"); *Snitman v. BMW Fin. Servs.*, 2025 WL 3032399, at *4-5 (E.D.N.Y. Oct. 30, 2025) ("Because [p]laintiff does not allege that (1) [d]efendant received notice of any dispute of his information from a credit reporting agency, or (2) that [d]efendant failed to conduct a reasonable investigation or otherwise failed to comply with the FCRA, [p]laintiff fails to state a cognizable claim for a violation of section 1681s-2(b).").

Weeden therefore has failed to raise a plausible claim against Liberty Mutual under the FCRA. Nevertheless, because a district court should generally give a pro se plaintiff the chance to amend her complaint unless there is no possibility of stating a viable claim, *see Hill v. Curcione*, 657 F.3d 116, 123-24 (2d Cir. 2011), the Court will permit Weeden to file an amended complaint. That amended complaint must allege, if possible, facts stating a viable FCRA claim in light of the analysis above; in other words, Weeden must allege facts showing that Liberty Mutual (i) received notice of a credit dispute from a credit reporting agency, and (ii) failed to investigate that dispute.

## II.    STATE LAW CLAIMS

Weeden does not suggest any bases for her action other than the FCRA. In light of Weeden's pro se status, however, the Court liberally construes the complaint, which alleges stress as a result of Liberty Mutual's actions, as also bringing claims for intentional and negligent infliction of emotional distress under New York law.

### A.    Intentional Infliction of Emotional Distress

To state a claim for intentional infliction of emotional distress under New York law, a plaintiff must allege (1) "extreme and outrageous conduct"; (2) "intent to cause, or disregard of a substantial probability of causing, severe emotional distress"; (3) "a causal connection between the conduct and injury"; and (4) "severe emotional distress." *Rich v. Fox News Network, LLC*, 939 F.3d 112, 122 (2d Cir. 2019) (quoting *Howell v. N.Y. Post Co.*, 81 N.Y.2d 115, 121, 612 N.E.2d 699, 702 (1993)). "Liability [for intentional infliction of emotional distress] has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in

7

a civilized society." *Stuto v. Fleishman*, 164 F.3d 820, 827 (2d Cir. 1999) (quoting *Howell*, 81 N.Y.2d at 122, 612 N.E.2d at 702). Intentional infliction of emotional distress "remains a highly disfavored tort under New York law," and it therefore "is to be invoked only as a last resort." *Turley v. ISG Lackawanna, Inc.*, 774 F.3d 140, 158 (2d Cir. 2014) (alterations, citation, and internal quotation marks omitted); *see also Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) ("[A]n intentional infliction tort may be invoked only as a last resort, to provide relief in those circumstances where traditional theories of recovery do not." (citations and internal quotation marks omitted)).

Other courts within this Circuit have dismissed claims for intentional infliction of emotional distress where plaintiffs alleged behavior far worse than the inaccurate reporting of credit information alleged here. *See Cohen v. Equifax Info. Servs., LLC*, 2019 WL 2451293, at *2-3 (S.D.N.Y. Apr. 17, 2019) (noting that allegations of reporting to credit agencies, even combined with "reprehensible" debt collection efforts, have been found insufficient to plead intentional infliction of emotional distress), *report and recommendation adopted*, 2019 WL 2171134 (May 20, 2019); *see also Evans v. Credit Bureau*, 904 F. Supp. 123, 127 (W.D.N.Y. 1995) ("[F]ail[ing] to correct the alleged inaccuracies in [plaintiff]'s credit report . . . does not constitute extreme and outrageous conduct which would support the claim for intentional infliction of emotional distress." (internal quotation marks omitted)). Accordingly, Weeden has not pleaded sufficiently outrageous conduct to plausibly raise a claim for intentional infliction of emotional distress. Nevertheless, because Weeden is proceeding pro se, *see Hill*, 657 F.3d at 123-24, the Court will permit her to amend her complaint to allege, if possible, a viable claim for intentional infliction of emotion distress.

### B. Negligent Infliction of Emotional Distress

Generally, "a plaintiff may establish a claim for negligent infliction of emotional distress in one of two ways: (1) the 'bystander' theory; or (2) the 'direct duty theory.'" *Baker v. Dorfman*, 239 F.3d 415, 421 (2d Cir. 2000) (quoting *Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996) (alteration omitted)). "Under the 'bystander' theory," a plaintiff may recover for injuries "resulting from his or her contemporaneous observation of serious physical injury or death inflicted by the defendant's conduct on a member of the plaintiff's immediate family in his or her presence." *Id.* (quoting *Bovsun v. Sanperi*, 61 N.Y.2d 219, 223-24, 461 N.E.2d 843, 844 (1983)). "Under the 'direct duty' theory, a plaintiff suffers emotional distress caused by [the] defendant's breach of a duty which unreasonably endangered [the] plaintiff's own physical safety." *Id.* (alterations, citation, and internal quotation marks omitted). Beyond those two theories, "New York also recognizes a cause of action in cases where there is 'an especial likelihood of genuine and serious mental distress, arising from special circumstances, which serves as a guarantee that the claim is not spurious.'" *Id.* (quoting *Johnson v. State*, 37 N.Y.2d 378, 382, 334 N.E.2d 590, 592 (1975) (alteration omitted)).

As with intentional infliction of emotional distress, Weeden has not pleaded a viable claim for negligent infliction of emotional distress under any theory. First, her complaint alleges nothing to suggest that the "bystander" theory of liability would apply. Second, Weeden has not alleged any facts showing that the defendants "unreasonably endangered [her] physical safety," *Baker*, 239 F.3d at 421, so the "direct duty" theory of liability is inapposite. Finally, Weeden has not pleaded a "an especial likelihood of genuine and serious mental distress," *id.* (quoting *Johnson*, 37 N.Y.2d at 382, 334 N.E.2d at 592), inherent in the process of furnishing information to a credit reporting

9

agency. In fact, other federal courts have dismissed claims for negligent infliction of emotional distress in FCRA cases that allege inaccurate credit reporting. *See Cohen*, 2019 WL 2451293, at *3.[4]

But again because of Weeden's pro se status, *see Hill*, 657 F.3d at 123-24, she may file an amended complaint alleging, if possible, facts that state a viable claim for negligent infliction of emotional distress. And if Weeden intends to raise any other state law claim in the amended complaint, she must specifically identify that claim.

---

[4] Although Liberty Mutual does not raise the argument in connection with any potential state law claims raised by Weeden, "[t]he FCRA contains two provisions arguably relating to preemption of state tort claims brought against furnishers of credit information." *Barberan v. Nationpoint*, 706 F. Supp. 2d 408, 427 (S.D.N.Y. 2010). "[T]he Second Circuit has held that the plain language of" one of those provisions—15 U.S.C. § 1681t(b)(1)(F)—"preempts state statutory and common law tort claims that relate to allegations of false reporting" by a furnisher. *McGee v. WebBank Inc.*, 2019 WL 1458217, at *2 (E.D.N.Y. Apr. 2, 2019) (citing *Macpherson v. JPMorgan Chase Bank, N.A.*, 665 F.3d 45, 47-48 (2d Cir. 2011)); *see also Comunale*, 328 F. Supp. 3d at 79 (concluding that "any state law claims arising from [p]laintiff's allegations that [d]efendants were willful, reckless, or negligent in disclosing information to the credit reporting agencies" were preempted by the FCRA). Nevertheless, the "FCRA does not have the power of complete preemption over state statutes and laws." *Brevard v. Wells Fargo Co.*, 2024 WL 1443820, at *3 (S.D.N.Y. Mar. 15, 2024); *cf. Comunale*, 328 F. Supp. 3d at 78 (section 1681t(b)(1)(F)'s preemption applies to claims related to the "subject matter" of section 1681s-2 governing the duties of furnishers). Therefore, if Weeden raises any state law claim in an amended complaint, that claim cannot fall within the "subject matter" of section 1681s-2. *See Brooks v. Higher Educ. Loan Auth. of the State of Mo. (MOHELA)*, 2026 WL 161196, at *6 (N.D.N.Y. Jan. 21, 2026) (permitting pro se plaintiff to amend despite state law claims appearing to be preempted by the FCRA).

## **CONCLUSION**

For the reasons stated above, Liberty Mutual's motion to dismiss, Docket Item 5, is GRANTED. Nevertheless, **within 45 days of the date of this order,** Weeden may file an amended complaint that corrects the deficiencies noted above.

Weeden is advised that an amended complaint is intended to ***completely replace*** the prior complaint in the action and thus "renders [any prior complaint] of no legal effect." *Int'l Controls Corp. v. Vesco*, 556 F.2d 665, 668 (2d Cir. 1977) (citations omitted); *see also Shields v. Citytrust Bancorp., Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994).

No later than 30 days after any amended complaint is filed, Liberty Mutual may answer, move against, or otherwise respond to the amended complaint. If Weeden does not amend her complaint within 45 days of the date of this order, then the Clerk of the Court shall close the case without further order.

This Court hereby certifies, under 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith, and leave to appeal to the Court of Appeals in forma pauperis is denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal in forma pauperis should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

SO ORDERED.

Dated: February 27, 2026
       Buffalo, New York

                                                */s/ Lawrence J. Vilardo*
                                            LAWRENCE J. VILARDO
                                            UNITED STATES DISTRICT JUDGE